**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **Laxman S. Sundae and Judith A. Sundae,** | **Civil No. 02-855 (JRT/SRN)** |
| **Plaintiffs,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Thomas W. Anderson, individually and as an employee of the Metropolitan Airports Commission, Metropolitan Airports Commission, Robert B. Swenson, individually and as an employee of W.D. Schock Co., Inc., Annette Simmons-Brown, individually and as a former employee of W.D. Schock Co., Inc., John Doe, individually and as an employee of W.D. Schock Co., Inc.** | |
| **Defendants.** | |

---

Laxman S. Sundae and Judith A. Sundae, appearing Pro Se

Gregory M. Bistram, Esq., and Michael J. Moberg, Esq., on behalf of Defendants

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on Defendants' Motion to Dismiss All Claims (Doc. No. 11); and on Plaintiffs' Motion to Remove the Law Firm of Briggs and Morgan from this Lawsuit (Doc. No. 15, 25); Motion to Strike Defendants' Exhibit #1-3 (Doc. No. 16); and Motion for an Order to Enforce Agency's Final Order (Doc. No. 14, 27). This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.



FILED APR 24 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

For the reasons set forth below, Defendants' motion should be granted and Plaintiffs' motions should be denied as moot.

## I. BACKGROUND

In 1993, the Minnesota Metropolitan Airports Commission (MAC) hired W.D. Schock Company, Inc. (WDSCO) to develop a noise mitigation program for the Minneapolis/St. Paul International Airport. In doing so, WDSCO provided land acquisition and relocation assistance to the MAC. WDSCO purchased several pieces of property around the airport, including a house owned by Judith Sundae located at 6433 20th Avenue South, Richfield, MN, in which Laxman Sundae was also residing.[1] The parties disputed the value of Judith Sundae's home. Plaintiff Laxman Sundae argued that he operated a business out of the home as well and requested business relocation benefits. On January 8, 1997, the Sundaes reached a global administrative settlement of $157,000 for "the release of any and all claims of each and every kind present and future, that may be made by Judith Sundae and Laxman Sundae, except Laxman's business relocation claim." (Moberg Aff. Ex. 1) (Plaintiffs' Mem. in Opp'n to Defendants' Mot. to Dismiss, Ex. 10). Plaintiff Laxman Sundae endorsed the check.

On January 22, 1997, the City of Rosemount inspected the Sundaes' future/replacement home and certified "that the structure located at the address below [2055 128th St. W], listed under the above building certificate/building permit, has passed final inspection." (Brodin Aff.

[1] It appears that at the time of the acquisition of Judith Sundae's home, Laxman Sundae and Judith Sundae had divorced, but the Sundaes have since reconciled.

Ex. B).[2] The Sundaes relocated to their newly built home in Rosemount, Minnesota sometime in February of 1997. (Plaintiffs' Mem. in Opposition to Defs.' Mot. to Dismiss, at 10). Plaintiffs claim that flooding occurred at their new home between March and July of 1997, which damaged their property. Id.; (Plaintiffs' January 24, 2003 Letter, at 2).

Meanwhile, Laxman Sundae's business relocation claim was denied initially and after a Level II appeal. After the Level II denial, Laxman Sundae brought suit on September 22, 1999 against WDSCO, William D. Schock, Ralph E. White, Robert B. Swenson (all WDSCO employees), L. James Fortman (a former MAC employee), and Dean C. Larson (the Level II hearing officer). (Moberg Aff. Ex. 3). Laxman Sundae alleged that the defendants fraudulently denied him business relocation benefits, discriminated against him in connection with relocation benefits, retaliated against him, negligently and intentionally inflicted emotional and physical distress, and caused injuries to his penis, eyes and extremities. Id. On February 26, 2001, the Honorable Michael J. Davis granted the defendants' motion to dismiss, and the Eighth Circuit Court of Appeals affirmed on April 25, 2002. Sundae v. W.D. Schock Company, Inc. et al., No. 99-1487 (D. Minn. 2001); Sundae v. W.D. Schock Company, Inc. et al., No. 01-3697 (8th Cir. 2002); (Moberg Aff. Ex. 4-5).

On March 21, 2002, Plaintiffs Laxman and Judith Sundae filed the instant suit. The instant complaint contains identical, and in many cases verbatim, factual allegations as the complaint filed in the case before Judge Davis. The instant complaint contains party and jurisdictional recitals in paragraphs one through seven and factual allegations in paragraphs eight

---

[2] The certificate of occupancy was conditional "based upon completion of final grade, surfaced driveway and sidewalks asap in spring 1997." (Brodin Aff. Ex. B).

through twenty-three. An examination of the instant complaint and the complaint before Judge Davis (the 1999 complaint) reveals the symmetry of factual allegations. For instance, paragraph eight of the instant complaint corresponds nearly verbatim to paragraph eleven of the 1999 complaint. Paragraph nine of the instant complaint corresponds nearly verbatim to paragraph eight of the 1999 complaint. Paragraph ten of the instant complaint corresponds verbatim to paragraph nine of the 1999 complaint. Paragraph eleven of the instant complaint corresponds nearly verbatim to paragraph twenty-six of the 1999 complaint. Paragraph twelve of the instant complaint corresponds nearly verbatim to paragraphs twenty-one and twenty-seven of the 1999 complaint. Paragraph thirteen of the instant complaint corresponds verbatim to paragraph twenty-nine of the 1999 complaint. Paragraph fourteen of the instant complaint corresponds nearly verbatim to paragraph forty-eight and forty-nine of the 1999 complaint. Paragraph fifteen of the instant complaint corresponds verbatim to the final two sentences of paragraph forty-eight of the 1999 complaint. Paragraph sixteen of the instant complaint corresponds nearly verbatim to paragraph fifty-one of the 1999 complaint. Paragraph seventeen of the instant complaint corresponds nearly verbatim to paragraph fifty-one of the 1999 complaint. Paragraph eighteen of the instant complaint corresponds nearly verbatim to paragraph twenty-two and twenty-eight of the 1999 complaint. Paragraph nineteen of the instant complaint corresponds nearly verbatim to paragraph twenty-three of the 1999 complaint. Paragraph twenty A, B, C, and D of the instant complaint corresponds nearly verbatim to paragraph twenty A, B, C, and D of the 1999 complaint. Paragraph twenty-one of the instant complaint corresponds nearly verbatim to paragraph thirty-eight of the 1999 complaint. Paragraph twenty-two of the instant complaint corresponds verbatim to paragraph forty-one of the 1999 complaint. Paragraph twenty-three of

the instant complaint corresponds verbatim to paragraph forty-seven of the 1999 complaint.

In the instant complaint, Plaintiffs make the following claims: Count I–Negligence; Count II–Flagrant Violation of the United States Constitution; Count III–Continuous Racial Discrimination, Minn. Stat. § 363.01 et seq., 42 U.S.C. § 1981, 1982, and 2000d; Count IV–violation of 42 U.S.C. § 1985(3) and 1986; and Count V–negligent and intentional infliction of emotional and physical distress. The claims, although similar and in some cases identical to those in the 1999 complaint, are reshaped to allege discrimination and damage in connection with the alleged flooding of Plaintiffs' new/replacement home and discrimination in connection with Plaintiffs' claims and appeals for flood payments. The claims in the instant suit are also being asserted, with the exception of Robert Swenson, against new parties. Defendants have moved to dismiss all claims. The parties, however, submitted additional materials outside the complaint and discovery closed on January 2, 2003.[3] Therefore, on March 27, 2003, this Court converted Defendants' motion to dismiss into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(b). By the March 27, 2003 Order, the parties were given notice and an opportunity to provide additional evidence. Plaintiffs submitted a brief, but it only reasserted arguments previously made. Defendants did not submit additional information.[4]

## II. SUMMARY JUDGMENT–STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be

---

[3] The parties submitted various exhibits, a release agreement, and Defendants submitted an affidavit.

[4] Of course, Defendants need not do so. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "After the moving party points out the absence of evidence to support the nonmoving party's case, the nonmoving party 'must advance specific facts to create a genuine issue of material fact for trial.'" In re TMJ Implants Product Liability, 113 F.3d 1484, 1492 (8th Cir. 1997). A non-moving party cannot rely on the "mere existence of *some* alleged factual dispute between the parties [to] defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). As to materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party shows–"that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case," id. at 325, "Rule 56(e) [] requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. If the non-moving party "fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then Rule 56(c) requires the entry of summary judgment against such party. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); accord Reed v. Woodruff County, 7 F.3d 808, 810 (8th Cir. 1993). All evidence will be viewed in the light most favorable to the nonmoving party, e.g., Vette Co. v. Aetna Casualty & Surety Co., 312 F.2d 1076, 1077 (8th Cir. 1980), and pro se pleadings are more liberally construed than those drafted by an attorney. See Smith v. St. Bernards Regional Med. Ctr., 19 F.3d 1254, 1255 (8th Cir. 1994).

## III. DISCUSSION

As an initial matter, the Court notes that there are significant ambiguities with the claims made and the parties actually asserting those claims. First, from what the Court can glean from the Complaint, the claims generally appear to concern only discrimination and damage in connection with the inspection and alleged flooding of Plaintiffs' replacement home. The parties, however, Plaintiffs in particular, spent a considerable amount of time during oral argument and in their briefs arguing about discrimination in connection with relocation claims. Any relocation claims concerning Defendants' acquisition of Judith Sundae's home in Richfield, Minnesota were fully resolved in January of 1997 when the parties settled their differences, and the Sundaes executed a global release of claims. Laxman Sundae's business relocation claim was denied in a final decision. (Moberg Aff. Ex. 2). Mr. Sundae sued various Defendants regarding discrimination in connection with his business relocation claim in the 1999 lawsuit before Judge Davis. Judge Davis dismissed Mr. Sundae's claims on a Rule 12(b)(6) motion for various deficiencies, but repeatedly stated that "Plaintiff has failed to allege facts that would demonstrate that he was discriminated against on the basis of his race [or national origin]." Sundae v. W.D. Schock Co. Inc. et al., Civ. No. 99-1487,

Order at 8, 6, 7 (D. Minn. 2001) (Moberg Aff. Ex. 4). The complaint in the instant lawsuit, although factually identical to the complaint in the 1999 lawsuit, does not appear to raise any claims against these Defendants regarding discrimination and the business relocation claim. Nevertheless, in the interest of a final resolution to this drawn-out dispute and since some claims could possibly be thought to include the business relocation claim, this Court will resolve issues where appropriate relating to discrimination and the business relocation claim.

Second, Judith Sundae did not sign the complaint in this matter, did not attend the pretrial scheduling conference, and did not sign any motion concerning this matter until after Defendants requested that any claims made by Judith Sundae be dismissed for failure to prosecute under Federal Rule of Civil Procedure 41(b). This is troubling for two reasons. First, Judith Sundae has failed to prosecute the complaint. At the hearing on this matter, Ms. Sundae did initially state that she wants to proceed with this case. Later, however, the following exchange occurred:

> Court: With respect to the business relocation claim and any allegations made in this case, you agree that those are not your claims, is that right?
> Ms. Sundae: Right, they're Laxman's.

Second, a fair reading of the complaint reveals that all of the claims, with the possible exception of the negligence claim, are only Laxman Sundae's claims as the claims are repackaged from Laxman Sundae's case before Judge Davis. For instance, Count II–Flagrant Violation of United States Constitution–refers singularly to "Plaintiff" and in paragraph thirty refers to depriving "the plaintiff of *his*" rights. Count V–Negligent/Intentional Infliction of Emotional and Physical Distress–refers to "Plaintiffs," "plaintiff," and "plaintiff's," but a close reading reveals that this is only Laxman Sundae's claim as it refers to "*his* well being and safety" and "making *him* irritable, angry." Moreover, Count V is nearly identical to Count V of the complaint before Judge Davis wherein

Laxman Sundae was the only plaintiff. Nevertheless, in the interest of full disposition, the Court will operate from the assumption that Ms. Sundae, along with Mr. Sundae, is making all the claims in the complaint.

### A. <u>**Plaintiffs' Claims Against Annette Simons-Brown**</u>

Annette Simons-Brown is named as a defendant in this matter individually and as a former employee of WDSCO. However, only one paragraph of forty-three paragraphs in the complaint references any actions of Annette Simons-Brown. Paragraph twenty-one is the only paragraph mentioning Annette Simons-Brown, and it states:

> In order to avoid payment for flood damage, WDSCO's notes of Advisory Assistance and other Contacts and its files and record show that, WDSCO officers couched [sic] its employees to lie and to bluff, telling the plaintiff incorrectly to believe that they had given him all the documents he needed. WDSCO employee Annette Simons-Brown knew the difference between the Federal Code of Regulations, the Uniform Relocation Act and the Federal Register. Nevertheless, defendants' attorney couched [sic] her to lie. They told her what to say when Plaintiff called her.
>
> WDSCO's forged and fabricated notes dated 9/23/96 or 9/24/96 show that on that date plaintiff had not asked to look at 49 CFR 24. Nonetheless, On [sic] December 15, 1997, Simons-Brown <u>**vehemently stated**</u> that he had received a copy of 49 CFR 24 on 9/15/96.

(Compl. ¶21) (emphasis in original).

This paragraph is nearly identical to paragraph thirty-eight of the complaint before Judge Davis. These factual allegations do not even state a claim against Annette Simons-Brown under any of Plaintiffs' theories. Plaintiffs have not offered any additional evidence to support their claims against Annette Simons-Brown. Accordingly, this Court recommends that Annette Simons-Brown be entitled to judgment as a matter of law, and the claims against her be dismissed. In any event, the following analysis of each claim applies equally to Defendant Simons-Brown.

### B. Res Judicata[5] and Plaintiff Laxman Sundae's Claims Against Robert Swenson

"'Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action.'" Lane v. Peterson, 899 F.2d 737, 741 (8th Cir. 1990) (quoting Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n.5 (1979)); accord Carc Inst., Inc. v. County of Ramsey, 612 N.W.2d 443, 447 (Minn. 2000) ("The doctrine applies when the parties to the two actions are the same, the second suit is for the same cause of action, and the original judgment was on the merits."). Two causes of action are the same for purposes of res judicata, if they "arise[] out of the same nucleus of operative facts." Lane, 899 F.2d at 742; accord SMA Serv., Inc. v. Weaver, 632 N.W.2d 770, 774 (Minn. App. 2001) ("Two causes of action are the same when they involve the same set of factual circumstances or when the same evidence will sustain both actions.") (citing also Anderson v. Werner Cont'l, Inc., 363 N.W.2d 332, 335 (Minn. App. 1985) that held claims are the same "if the same operative nucleus of facts is alleged in support of the claims"). Therefore, "res judicata precludes the

---

[5] "There has not yet been any comprehensive identification of the res judicata rules that apply to federal judgments deciding state-law claims." 18B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 4472, p. 375 (2d ed. 2002). The first case before Judge Davis arose under federal question jurisdiction but also involved supplemental state law claims–the instant suit arises in a similar fashion. This Court, however, need not choose or decide whether Minnesota state rules or federal rules on res judicata should be applied to determine the preclusive effect of Judge Davis' decision on the state law claims because Minnesota state and federal rules regarding res judicata would compel the same result. Accordingly, parallel citations to Minnesota state rules will be made for illustrative purposes. Finally, the term res judicata is used herein in its most narrow sense to include only the principle of claim preclusion.

In addition, although Defendants argue that many issues raised by the Plaintiffs are also barred from relitigation by collateral estoppel or issue preclusion, the Court thinks it best to directly address the issues so as to avoid ambiguous issues of privity and squarely resolve this matter.

relitigation of a claim on grounds that were raised *or could have been raised* in the prior action." Lane, 899 F.2d at 741 (emphasis added); accord Care Inst., Inc., 612 N.W.2d at 447 ("Under the doctrine of res judicata, parties to an action may be prohibited from raising any matter in a second suit that was or could have been litigated in the first suit.").

Here, the claims raised in the instant suit by Plaintiff Laxman Sundae against Robert Swenson are barred by res judicata. The case before Judge Davis (Civ. No. 99-1487) resulted in a dismissal for failure to state a claim upon which relief may be granted, a judgment on the merits. The parties are the same as Robert Swenson was a defendant and Laxman Sundae was the plaintiff in the prior suit. Finally, the causes of action in both the prior (Civ. No. 99-1487) and instant lawsuits are the same for purposes of res judicata because both unquestionably arise out of the same set of factual circumstances or the same operative nucleus of facts. The complaint in the instant lawsuit relies entirely on, in many instances verbatim, facts from the complaint in the prior lawsuit, and the complaint in the instant lawsuit adds no additional facts. Therefore, Plaintiff Laxman Sundae's claims against Robert Swenson in this case are barred by res judicata and should be dismissed. See Rhodes v. Jones, 351 F.2d 884, 887-88 (8th Cir. 1965) (holding in a similar situation and after comparing the complaints that second suit was barred).

To the extent Judith Sundae asserts claims against Defendant Swenson, those claims are entirely unsupported and should be dismissed. Indeed, not a single sentence in the complaint mentions Robert Swenson by name. Apparently, Defendant Swenson was the John Doe named in the caption of the initial complaint, but the complaint only refers to factual allegations against Defendant Doe in ¶18. Such factual allegations do not even state a claim against Defendant Swenson. Further, Plaintiffs have wholly failed to produce any additional evidence to support their

claims against Defendant Swenson. In any event, the following analysis of each claim applies equally to Defendant Swenson.

### C. Count-I–Negligence Claim

Plaintiffs' negligence claim alleges that Defendants owed Plaintiffs a duty of care under 49 C.F.R. § 24 (2003). By failing to conduct an inspection to make sure that Plaintiffs' new home was decent, safe, and sanitary (DSS), Plaintiffs allege that Defendants breached their duty. Finally, Plaintiffs allege that Defendants' breach caused flood damage to Plaintiffs' home.

Plaintiffs' claim fails as a matter of law. In order to establish a claim for negligence, a plaintiff must allege sufficient facts to establish: "(1) the existence of a duty of care; (2) a breach of that duty; (3) an injury was sustained; and (4) breach of the duty was the proximate cause of the injury." Lubbers v. Anderson, 539 N.W.2d 398, 401 (Minn. 1995). Even assuming Defendants owed the type of duty alleged, Defendants did not breach their duty as a matter of law.

The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. 4601 et seq., provides that federal agencies shall promulgate "such regulations as may be necessary to carry out this chapter." 42 U.S.C. § 4633(a)(1). Federal Aviation Administration (FAA) Order 5100.37A (Land Acquisition and Relocation Assistance for Airport Projects) provides in chapter 6-4:

> Before making payment to the displaced person, the airport owner will have had the replacement dwelling inspected to determine that it meets the standards for decent, safe, and sanitary housing as described in paragraph 1-16. *These standards require that the dwelling meets applicable housing and occupancy codes.*
>
> a. *The airport owner may utilize the services of any public agency or any other qualified person or company ordinarily engaged in housing inspection to make the inspection.*
>
> b. The determination by the airport owner that a dwelling meets the standards for

> decent, safe, and sanitary housing is made solely for the purpose of determining the eligibility of relocated individuals and families for replacement housing payments, and is not a representation for any other purpose.

(Emphasis added). See also 42 U.S.C §§ 4625(c)(3), 4630(3), and 4601(10); 49 C.F.R. § 24.403(b) ("Before making a replacement housing payment or releasing a payment from escrow, the Agency or its designated representative shall inspect the replacement dwelling and determine whether it is a decent, safe, and sanitary dwelling as defined at § 24.2.").

Chapter 1-16 of the FAA Order defines "decent safe, and sanitary dwelling" as "a dwelling which meets applicable housing and occupancy codes." 49 C.F.R. § 24.2 defines DSS exactly the same. Defendants actually did have the property inspected in accordance with chapter 6-4 and 49 C.F.R. § 24.2.

Defendants produced a Certificate of Occupancy for Plaintiffs' replacement home issued by the City of Rosemount, Minnesota stating that the structure passed final inspection. (Brodin Aff. Ex. B). Under chapter 6-4(a), Defendants could utilize the City of Rosemount to make the inspection.[6] Thus, Defendants fulfilled the duty to inspect Plaintiffs' home as a matter of law, and, accordingly, did not breach any duty owed to Plaintiffs as a matter of law.[7]

In addition, Plaintiffs have failed to allege sufficient facts in their complaint, let alone

---

[6] Utilizing city inspectors makes sense; otherwise, Defendants inspection would be redundant because the inspection is to determine if it meets occupancy codes.

[7] The fact that the Certificate of Occupancy was conditional based upon completion of final grade and surfacing of the driveway in the Spring does not change the analysis. The house was decent, safe, and sanitary at the time Plaintiffs moved in. Plaintiffs and/or Plaintiffs' builder, not Defendants, were responsible for appropriately completing the final grade and driveway surfacing in the Spring.

produce sufficient evidence to survive summary judgment, to demonstrate that, assuming Defendants did breach a duty, Defendants' actions proximately caused Plaintiffs' harm. Therefore, Plaintiffs' negligence claim fails as a matter of law and should be dismissed.

Finally, the release signed by Plaintiffs bars the negligence claim. The interim release was signed by Plaintiffs on January 8, 1997 and released "any and all claims of each and every kind present and future, that may be made by Judith Sundae and Laxman Sundae, except Laxman's business relocation claim." (Moberg Aff. Ex. 1). On January 22, 1997, Plaintiffs' replacement home in Rosemount was inspected. On January 23, 1997, Plaintiffs signed the final release agreement that again released Defendants "from any and all demands, obligations, actions, causes of actions, damages, costs, debts, liabilities, expenses and compensation of any nature whatsoever, whether based in tort, contract or condemnation or any other theory of recovery, known or unknown, that Laxman S. Sundae or Judith A. Sundae, or each of them, may have or assert regarding the MAC acquisition of Parcel P 177 C (6433 20th Avenue South, Richfield, MN 55423)." Id. This negligence claim is a future claim made by Laxman and Judith Sundae against MAC and is barred by the interim agreement. This negligence claim is also one that is barred by the final agreement because it clearly is regarding the MAC's acquisition of Parcel P 177 C. Parcel P 177 C was the home that MAC acquired from Judith Sundae. The acquisition of Parcel P 177 C was interconnected and dependent on Plaintiffs finding a comparable replacement dwelling. Indeed, the regulations provide: "No person to be displaced shall be required to move from his or her dwelling unless at least one comparable replacement dwelling (defined at § 24.2) has been made available to the person." 49 C.F.R. § 24.204(a); accord FAA Order, chp. 6-2(a). Moreover, in order to release funds

attributable to the MAC acquiring the displacement dwelling, the MAC or a permissible agent (City of Rosemount) must inspect the replacement dwelling to assure DSS standards are met–something that the MAC did do. 49 C.F.R. § 24.403(b). Therefore, Plaintiffs' negligence claims regard the MAC's acquisition of Parcel P 177 C, and, accordingly, are barred by the final release.

### D. Count II–§ 1983 Claim

Plaintiffs allege that Defendants intentionally denied them equal protection of the law and due process by refusing to conduct a DSS inspection and offer DSS housing, refusing to process flood damage claims, and charging Plaintiffs for documents when "majority class homeowners" were not charged. Plaintiffs do not allege the basis for the equal protection claim, but given the general nature of the complaint this Court will assume the discrimination alleged is racial in regard to Laxman Sundae's claims and gender in regard to Judith Sundae's[8] claims.

To establish a prima facie violation of the equal protection clause on the basis of racial discrimination, there must be state action, and Plaintiffs must offer facts and evidence that constitutes "[p]roof of racially discriminatory intent or purpose." Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977); accord Foster v. Wyrick, 823 F.2d 218, 221 (8th Cir. 1987). Here, even the complaint does not allege any facts such that if true would demonstrate Defendants intentionally refused to conduct a DSS inspection of the replacement dwelling, refused to process flood claims, and charged Plaintiffs for documents because of Laxman Sundae's race or

[8] From all accounts, Judith Sundae is a white female, and Plaintiffs have not identified any other protected classification for Judith Sundae. The Court bases this statement on Judith Sundae's appearance at the hearing on this matter. The complaint did not identify Judith Sundae in the party recitals other than to note that the Sundaes live in Rosemount, Minnesota.

Judith Sundae's gender. Although civil rights pleadings are to be construed liberally, "they must not be conclusory and must set forth facts which state a claim as a matter of law." Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993). In fact, courts must "reject conclusory allegations of law and unwarranted inferences." Silver v. H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997). The factual allegations in the complaint are simply conclusory and patently speculative. See Sundae v. W.D. Schock Co., Inc., Civ. No. 99-1487, at 8 (D. Minn. Feb. 26, 2001) (holding in connection with Laxman Sundae's claim under 42 U.S.C. § 1981 and 1982 that "Plaintiff has failed to allege facts that would demonstrate that he was discriminated against on the basis of his race"). A good example is as follows:

> 14. Because of plaintiff Sundae's race, color, national origin and having filed complaints of discrimination, Defendants conspired with each other and among themselves to deny plaintiff a functionally equivalent decent, safe and sanitory [sic] replacement dwelling in direct violation of 49 CFR 24.403.

(Compl. ¶14).

In addition, Plaintiffs have offered absolutely no evidence that would create a genuine issue as to any material fact in connection with the equal protection claim. This is so because Plaintiffs have simply not offered any material facts in support of their equal protection claim. To the extent this claim relates to Mr. Sundae's business relocation claim, it is also fatally unsupported by any non-conclusory factual allegations in the complaint or additional evidence.

Plaintiffs have also alleged in Count II that Defendants deprived Plaintiffs of their procedural due process rights. As with Plaintiffs' other claims, they provide absolutely no facts, other than conclusory assertions such as Defendants "[r]efus[ed] to process Plaintiff's flood damage claims and appeals," either in the complaint or by way of additional evidence to support their due process claim.

To establish a procedural due process claim, Plaintiffs must demonstrate that they have a protected property or liberty interest, and that such interest was taken from them without due process of law. E.g., Bd. of Regents v. Roth, 408 U.S. 564, 570-71 (1972); Hopkins v. Saunders, 199 F.3d 968, 975 (8th Cir. 1999). In order to have a property interest, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577. Property interests are created by existing rules or understandings that stem from an independent source such as state law. Id.

Plaintiffs' due process claim fails as a matter of law for a variety of reasons.[9] First, Plaintiffs have offered no evidence, other than scant and conclusory allegations in their complaint, that Defendants denied them due process. Plaintiffs have offered no evidence that they actually filed a claim or appeal or what response, if any, Defendants made. Rather, the only evidence that this Court has that Plaintiffs even filed a claim for flood damage with Defendants is Plaintiffs' conclusory allegations in the complaint that Defendants "refused to process Plaintiff Sundae's application and notice of hearing and hearing to make restitution for flood damage." (Compl. ¶19; see also ¶18, 29(B)).

Second, Plaintiffs ground their property interest in 49 C.F.R. § 24.10. § 24.10(b) provides: "Any aggrieved person may file a written appeal with the Agency in any case in which the person believes that the Agency has failed to properly consider the person's application for assistance under

---

[9] Given the discussion of the following two dispositive issues, the Court refrains from discussing other dispositive issues in connection with Plaintiffs' due process claim such as the issue of whether Plaintiffs received all the process that was due to them.

this part." Plaintiffs assert that Defendants have violated their due process rights by refusing to process flood damage claims and appeals. 49 C.F.R. § 24.10, however, does not provide Plaintiffs with a property interest in filing and appealing flood damage claims. Plaintiffs' acquisition and relocation dispute with Defendants regarding the value of their displacement home in Richfield, Minnesota was fully resolved in January of 1997 when Plaintiffs settled such dispute. Plaintiffs received $157,000 and released Defendants from all existing and future claims regarding Defendants' acquisition of Plaintiffs' home. Defendants properly inspected Plaintiffs replacment home in Rosemount, Minnesota, and the money to purchase such home was released. Thus, in January of 1997, save for Plaintiff Laxman Sundae's business relocation claim,[10] Plaintiffs' ties to Defendants and the acquisition process *were severed*. Plaintiffs cannot now bootstrap an alleged right to make claims and appeals for flood damage to an acquisition program that Plaintiffs should no longer be and are not entitled to be involved in. If Plaintiffs were to have it their way, Defendants would be liable for any defect that materializes with a brand new house, even though the new house passed inspection. Defendants need not entangle themselves any further with Plaintiffs' demands. Plaintiffs are simply seeking relief for alleged flood damage from the wrong parties.

Accordingly, Plaintiffs' § 1983 claim/Count II fails as a matter of law and should be dismissed.

### E. <u>Count III–MHRA, 42 U.S.C. § 1981, 1982, 2000d</u>

#### 1. MHRA Claim

From Plaintiffs' complaint, it is utterly impossible to determine which provision of the

---

[10] Laxman Sundae's business relocation claim was denied and was the subject of Mr. Sundae's subsequent lawsuit before Judge Davis.

MHRA that Plaintiffs rely upon or which allegations in Count III relate to the MHRA claim.

Claims brought under the MHRA are subject to a one-year statute of limitations from the date of the discriminatory act. Minn. Stat. § 363.06, subd. 3; Smith v. Ashland, Inc., 250 F.3d 1167, 1172 (8th Cir. 2001). Plaintiffs filed the instant complaint on March 21, 2002. Plaintiffs' complaint relates to allegations of discrimination in connection with inspecting Plaintiffs replacement home and processing Plaintiffs' flood claims and appeals. The inspection of Plaintiffs' replacement home occurred on January 22, 1997. Plaintiffs' home was allegedly flooded between March and July of 1997. (Plaintiffs' January 24, 2003 Letter, at 2) (Plaintiffs' Mem. in Opp'n to Defendants' Mot. to Dismiss All Claims, at 10). Thus, any discrimination in connection with inspecting Plaintiffs' home occurred more than one year prior to the filing of this lawsuit, and, therefore, is barred.

As noted above, Plaintiffs do not specify when or, other than general assertions, if they filed claims or appeals for flood damage. Plaintiff Laxman Sundae did include some factual allegations about flooding in his complaint before Judge Davis. (Moberg Aff. Ex. 3, at ¶51). The complaint before Judge Davis was filed on or about September 22, 1999, and the fact that it included factual allegations about flood damage suggests that any discrimination in connection with a flood damage claim or appeal occurred prior to the 1999 case. Indeed, Plaintiffs list August 4, 1997 as the date that Defendants "Failed to Pay for Property Damage Because of Agency's Failure to Conduct DSS Inspection." (Plaintiffs' Mem. of Points and Authorities in Opp'n to Defendants' Mot. to Dismiss All Claims, Ex. 13, at 4). This further suggests that Plaintiffs' flood claims and appeals occurred in approximately August of 1997. In any event, Plaintiffs cannot avoid the statute of limitations by failing to state when they filed their flood damage claims and appeals, which are the basis for their claim of discrimination. Accordingly, any MHRA claims regarding discrimination in connection

with flood damage claims and appeals or Mr. Sundae's business relocation claim,[11] are barred by the statute of limitations. In addition, Plaintiffs do not even have a right to file flood damage claims or appeals.

Finally, Plaintiff has failed to provide any factual basis for any discrimination claim to survive a motion to dismiss, much less the evidentiary basis required for a reasonable jury to find in Plaintiffs' favor. To the extent this claim relates to Mr. Sundae's business relocation claim, it is also fatally unsupported by any non-conclusory factual allegations in the complaint or additional evidence. Plaintiffs' argument that the discrimination is on going is, likewise, unsupported and frivolous. Therefore, Plaintiffs' MHRA claims fail as a matter of law and should be dismissed.

**2. 42 U.S.C. § 1981 and 1982**

42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcement of contracts. In order to make out a prima facie case under § 1981, Plaintiffs must show that (1) they are members of a racial minority; (2) Defendants intended to discriminate against them on the basis of their race; and (3) the discrimination concerned a subject recited in the statute. Williams v. Lindenwood Univ., 288 F.3d 349, 355 (8th Cir. 2002). Further, "it is well established that claims for gender discrimination are not viable claims under Section 1981." Lake v. Honeywell, Inc., 1997 WL 458463, at *5 (D. Minn. May 27, 1997); accord Runyon v. McCrary, 427 U.S. 160, 167 (1976); Crites v. Kaiser Aluminum and Chem. Corp., No. 91-1231, 1992 WL 64873, at *1 (4th Cir. Apr. 3, 1992) (unpublished).

---

[11] To the extent the business relocation claim is being asserted here, it clearly is barred by the statute of limitations as the events giving rise to it occurred at least prior to December 28, 1998, the date of the MAC's final denial of Plaintiff's business relocation claim.

Plaintiff Judith Sundae's claim fails as a matter of law because she is not a racial minority; she is a white female and is not alleging that Defendants discriminated against her because of her race. Plaintiff Laxman Sundae's claim fails as a matter of law because, as noted elsewhere, Plaintiff has failed to offer evidence, other than scant, conclusory allegations in the complaint, that Defendants intentionally discriminated against him. Indeed, the complaint fails to state a claim in this regard. See Sundae v. W.D. Schock Company, Inc. et al., No. 99-1487, Order at 8 (D. Minn. 2001) (dismissing, on the basis of the same factual allegations, Laxman Sundae's § 1981 claim because "Plaintiff has failed to allege facts that would demonstrate that he was discriminated against on the basis of his race in the making, performance and enforcement of a contract"). To the extent this claim relates to Mr. Sundae's business relocation claim, it is also fatally unsupported by any non-conclusory factual allegations in the complaint or additional evidence. Accordingly, Plaintiffs' 42 U.S.C. § 1981 claims fail as a matter of law and should be dismissed.

**3. 42 U.S.C. § 1982**

42 U.S.C. § 1982 prohibits racial discrimination in connection with the inheritance, purchase, lease, sale, holding, and conveyance of real and personal property. In order to make out a prima facie case under § 1982, Plaintiffs must show (1) they are members of a racial minority; (2) Defendants denied Plaintiffs rights or benefits in connection with the ownership of property; and (3) Defendants would not have denied such rights in the absence of intentional racial discrimination. Fakorzi v. Dillard's, Inc., 2003 WL 1255635, at *15 (S.D. Iowa Mar. 11, 2003). Further, § 1982 "deals only with racial discrimination," Jones v. Alfred H. Mayer Co., 392 U.S. 409, 413 (1968), and, therefore, "[s]ex discrimination is not a basis for redress under Section 1982." Smith v. Laborers Int'l Union, 1987 WL 26642, at *4 (E.D. Pa. Dec. 9,1987); accord Knott v. Missouri Pac.

R. Co., 398 F.Supp. 856, 857 (E.D. Mo. 1975).

Plaintiff Judith Sundae's claim fails as a matter of law because she is not a racial minority; she is a white female and is not alleging that Defendants discriminated against her because of her race. Plaintiff Laxman Sundae's claim fails as a matter of law because, even assuming Defendants denied him rights or benefits in connection with ownership of property, Mr. Sundae has failed to offer evidence, other than scant, conclusory allegations in the complaint, that Defendants did so intentionally on account of his race. Indeed, the complaint fails to state a claim in this regard. See Sundae v. W.D. Schock Company, Inc. et al., No. 99-1487, Order at 8 (D. Minn. 2001) (dismissing, on the basis of the same factual allegations, Laxman Sundae's § 1982 claim because "Plaintiff has failed to allege facts . . . that his right to acquire or use property was abridged in some way due to discrimination on the basis of his race"). To the extent this claim relates to Mr. Sundae's business relocation claim, it is also fatally unsupported by any non-conclusory factual allegations in the complaint or additional evidence. Accordingly, Plaintiffs' 42 U.S.C. § 1982 claims fail as a matter of law and should be dismissed.

**4. 42 U.S.C. § 2000d**

§ 2000d prohibits discrimination on the basis of race, color, or national origin in connection with a program or activity that receives federal financial assistance. "To establish the elements of a prima facie case under Title VI, a complaining party must demonstrate that his/her race, color, or national origin was the motive for the discriminatory conduct." Thompson by and through Buckhanon v. Bd., 144 F.3d 574, 581 (8th Cir. 1998); Tinsley v. Kemp, 750 F.Supp. 1001, 1011 (W.D. Mo. 1990) (citing Williams v. City of Sioux Falls, 846 F.2d 509, 511 (8th Cir. 1988)) ("Intent to discriminate is required under Title VI . . . ."). Like §§ 1981 and 1982, § 2000d does not apply

to discrimination on the basis of sex. See generally N. Haven Bd. of Ed. v. Bell, 456 U.S. 512, 544-45 (1982) (explaining that Title IX was enacted, in part, in order to close loopholes from other statutes such as § 2000d that "barred discrimination on the basis of 'race, color, or national origin,' but not sex, in any federally funded programs and activities").

Plaintiff Judith Sundae's claim fails as a matter of law because she is not a racial minority; she is a white female and is not alleging that Defendants discriminated against her because of her race, color, or national origin. Plaintiff Laxman Sundae's claim fails as a matter of law because, as noted elsewhere, he has failed to offer evidence, other than scant, conclusory allegations in the complaint, that Defendants intentionally discriminated against him. Indeed, the complaint fails to state a claim in this regard. See Sundae v. W.D. Schock Company, Inc. et al., No. 99-1487, Order at 8 (D. Minn. 2001) (dismissing, on the basis of the same factual allegations, Laxman Sundae's § 2000d claim because "Plaintiff has presented no evidence to show a causal connection between the reason for WDSCO's denial of relocation benefits and his race, color, or national origin"). To the extent this claim relates to Mr. Sundae's business relocation claim, it is also fatally unsupported by any non-conclusory factual allegations in the complaint or additional evidence. Accordingly, Plaintiffs' 42 U.S.C. § 2000d claims fail as a matter of law and should be dismissed.

### 5. Minnesota Equal Protection Clause

Plaintiffs state in their complaint that "[b]y their action described above (paragraphs 1-33), defendants have intentionally violated the Equal Protection Clause of the Minnesota constitution." (Compl. ¶33).

Article I, section 2 of the Minnesota Constitution provides that "[n]o member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof."

"[T]here is an important difference between the equal protection jurisprudence developed by the United States Supreme Court through its interpretations of the United States Constitution and the approach adopted by [the Minnesota Supreme] [C]ourt under the Minnesota Constitution." State v. Frazier, 649 N.W.2d 828, 841 (Minn. 2002) (Page, J., dissenting). Under the United States Constitution's Equal Protection Clause, one must show intent or purpose to discriminate, Washington v. Davis, 426 U.S. 229, 239-42 (1976), and "[a] disparate impact, even upon members of a racial minority, . . . does not violate equal protection." M.L.B. v. S.L.J., 519 U.S. 102, 135 (1996) (Thomas, J., dissenting); accord Davis, 426 U.S. at 239 ("[O]ur cases have not embraced the proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional *solely* because it has a racially disproportionate impact.") Under the Minnesota Constitution's Equal Protection Clause, however, a party "who challenges the constitutionality of a statute on the basis that it has a disparate impact on the members of a minority racial group is entitled to review of the statute under the Minnesota rational basis test if the defendant shows that the statute falls more harshly on one group than another." Frazier, 649 N.W.2d at 842 (Page, J., dissenting); see also State v. Russell, 477 N.W.2d 866 (Minn. 1991).

It is not clear from Plaintiffs' complaint what practices Plaintiffs are challenging and paragraph thirty-three of Count III hardly clarifies the issue. Paragraph thirty-two of Count III alleges discrimination in connection with paying for flood damage. Plaintiffs' other claims relate to discrimination in connection with inspecting Plaintiffs' replacement home and processing flood claims. Therefore, this Court interprets Plaintiffs' Minnesota equal protection claim to relate to discrimination in connection with replacement home inspections and processing flood claims.

Plaintiffs' Minnesota equal protection claims fail as a matter of law and, accordingly, should

be dismissed. First, Plaintiffs do not even have a right to file claims or appeals requesting payment for flood damage. Second, Defendants actually did properly inspect Plaintiffs' replacement as opposed to discriminatorily failing to inspect it. Third, Plaintiffs have offered absolutely no evidence that Defendants intentionally discriminated against them on the basis of race, gender, or any other classification. Finally, Plaintiffs have offered no relevant evidence that Defendants' practices had a disparate impact on racial minorities or women. Plaintiffs state in their brief and complaint in patently conclusory fashion that "MAC and its contractors and agents inspected and approved all replacement homes for majority class members," (Compl. ¶16) Defendants "scheduled hearings on contested cases promptly and settle more than 201 cases at Level I" for majority class homeowners (Compl. ¶23), and "[o]ut of 430 occupants, I was the only person who was unlawfully evicted without any relocation payments or a hearing." (Plaintiffs' Mem. in Opp'n to Defendants' Mot. to Dismiss All Claims, at 11). Having made these allegations, however, Plaintiffs offer no evidence in support, and, therefore, Plaintiffs' Minnesota equal protection claim fails as a matter of law. Moreover, these allegations are irrelevant because (1) Defendant's did inspect Plaintiffs' replacement home; (2) Plaintiffs do not have a right to make flood damage claims as their involvement in the acquisition process has been severed; (3) Plaintiffs endorsed a check settling their relocation claim for $157,000, and (4) Plaintiff Laxman Sundae's business relocation claim was denied in a final decision after a Level II appeal. To the extent this claim relates to Mr. Sundae's business relocation claim, it is also fatally unsupported by any non-conclusory factual allegations in the complaint or additional evidence.

### F. <u>Count IV–42 U.S.C. § 1985(3) and 1986</u>

Plaintiffs allege that "Defendant Anderson engaged in [a] conspiracy to deprive plaintiff of

his due process rights" and "Anderson had [the] power to prevent or aid in preventing wrong actionable under [the] Civil [R]ights Act of 1964, et. [s]eq." (Compl. ¶36). The factual allegations in the complaint to support these allegations are the following two vague and conclusory sentences: "Because of plaintiff Sundae's race, color, national origin and having filed complaints of discrimination, Defendants conspired with each other and among themselves to deny plaintiff a functionally equivalent decent, safe and sanitary replacement dwelling in direct violation of 49 C.F.R. 24.403;" (Compl. ¶14), and "Defendants Doe recruited Defendant MAC's employees including defendant Anderson and from that day onward, these defendants conspired with each [other] to violate plaintiffs' civil rights and forever preclude Plaintiff from seeking payments for flood damage . . . ." (Compl. ¶18).

**1. 42 U.S.C. § 1985(3)**

§ 1985(3) "prohibits two or more persons from conspiring to deprive another of equal protection of the laws or of equal privileges and immunities under the laws." Ballinger v. N. Carolina Agr. Extension Serv., 815 F.2d 1001, 1006-07 (4th Cir. 1987). To establish a constitutional conspiracy claim, Plaintiffs must show that Defendants: "(1) 'conspir[ed] . . .' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' [They] must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'" Bogren v. Minnesota, 236 F.3d 399, 409 (8th Cir. 2000). Plaintiffs must prove that Defendants acted with the "purpose" of discriminating on the basis of class-based invidious animus. E.g., Larson by Larson v. Miller, 76

F.3d 1446, 1454 (8th Cir. 1996) ("The 'purpose' element of the conspiracy requires that the plaintiff prove a class-based 'invidiously discriminatory animus.'"). In addition, Plaintiffs must demonstrate through specific facts that Defendants reached an agreement or had a meeting of the minds. E.g., id.

Here, Plaintiffs have failed to even state a claim, let alone offer evidence supporting each element of their conspiracy claims so as to allow a reasonable jury to return a verdict in their favor. Indeed, "plaintiffs advance nothing more than bare allegations and rank speculation." Mahaney v. Warren County, 206 F.3d 770, 772 (8th Cir. 2000) (affirming the district court's grant of summary judgment to the defendants on plaintiffs' § 1985(3) claim because the plaintiffs simply produced no evidence); see also Genosky v. Minnesota, 244 F.3d 989, 993-94 (8th Cir. 2001) (same); Kurtz v. City of Shrewsbury, 245 F.3d 753, 758 (8th Cir. 2000) (same); Bogren, 236 F.3d at 409 (same); Moore v. Reno, 2000 WL 116059, at *1 (8th Cir. Jan. 26, 2000) (per curiam) (unpublished) (same). To the extent this claim relates to Mr. Sundae's business relocation claim, it is also fatally unsupported by any non-conclusory factual allegations in the complaint or additional evidence. Therefore, Plaintiffs' § 1985(3) claims fail as a matter of law and, accordingly, should be dismissed.

**2. 42 U.S.C. § 1986**

"A claim under 42 U.S.C. § 1986 (action for neglect to prevent commission of § 1985 violation) is dependent upon a valid § 1985 claim." Adams ex rel.Harris v. Boy Scouts of Am., 271 F.3d 769, 774 n.8 (8th Cir. 2001); accord Moore, 2000 WL 116059, at *1; McCalden v. California Library Ass'n, 955 F.2d 1214, 1223 (9th Cir. 1990). Since Plaintiffs' § 1985(3) claims fail, the § 1986 claims fail as well and, accordingly, should be dismissed.

### G. Count V–Negligent/Intentional Infliction of Emotional and Physical Distress

Plaintiffs claim that Defendants' actions caused Plaintiffs personal and financial stress in their day to day lives including: elevated blood sugar levels, injury to their hearts and upper and lower extremities, making them irritable, angry, depressed and suicidal. Plaintiffs claim that Defendants caused this distress for "more than five years." (Compl. ¶¶43, 41).

#### 1. Intentional Infliction of Emotional/Physical Distress

A claim for intentional infliction of emotional distress is subject to a two-year statute of limitations. Minn. Stat. § 541.07(1); Jones v. Indep. Sch. Dist., 2003 WL 1702000, at *2 (Minn. App. April 1, 2003) ("Claims of intentional infliction of emotional distress are governed by the two-year statute of limitations."). Plaintiffs filed the instant lawsuit on March 21, 2002. Here, Plaintiffs' claims, by their own admission, relate to actions that occurred over five years ago. In fact, Plaintiff Laxman Sundae included the exact same claim in his 1999 lawsuit wherein Mr. Sundae also claimed the distress had occurred "over more than 5 years." (Sundae v. W.D. Schock Co., Inc. et al., Civ. No. 99-1487, First Am. Compl. ¶¶ 81,78). This would peg the accrual of Plaintiffs' cause of action sometime in 1994. Any claim by Plaintiffs that Defendants' tortious actions are ongoing is wholly unsupported and frivolous. Thus, Plaintiffs' intentional infliction of emotional distress claims are barred by the statute of limitations as well as unsupported by the record and, accordingly, should be dismissed.

#### 2. Negligent Infliction of Emotional/Physical Distress

A claim for negligent infliction of emotional distress is subject to a six-year statute of limitations. Jones, 2003 WL 1702000, at *3. To establish a claim for negligent infliction of

emotional distress, Plaintiffs must show they: (1) were within a zone of danger of physical impact; (2) reasonably feared for their own safety; and (3) suffered severe emotional distress with attendant physical manifestations. E.g., K.A.C. v. Benson, 527 N.W.2d 553, (Minn. 1995). Plaintiffs fail to offer any evidence on each element. There is no evidence Plaintiffs were within a zone of some physical impact, feared for their safety, or suffered severe emotional distress with physical manifestations. Plaintiffs do make some conclusory allegations about physical and emotional manifestations of Defendants' "actions," but this, of course, would be woefully inadequate even if they established elements one and two. Therefore, Plaintiffs' negligent infliction of emotional distress claims fail as a matter of law and, accordingly, should be dismissed.

## IV. PLAINTIFFS' OTHER MOTIONS

Since Plaintiffs' entire lawsuit should be dismissed, Plaintiffs' other motions will be denied as moot.

Based upon the foregoing and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

1. Defendants' Motion to Dismiss All Claims (Doc. No. 11) having been converted into a Motion for Summary Judgment should be **GRANTED**.

2. Plaintiff's Complaint should be **DISMISSED WITH PREJUDICE**.

3. Plaintiffs' Motion to Remove the Law Firm of Briggs and Morgan from this Lawsuit (Doc. No. 15, 25) should be **DENIED AS MOOT**.

4. Plaintiffs' Motion to Strike Defendants' Exhibit #1-3 (Doc. No. 16) should be **DENIED AS MOOT**.

5. Plaintiffs' Motion for an Order to Enforce Agency's Final Order (Doc. No. 14, 27) should be **DENIED AS MOOT**.

Dated: April 23, 2003

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by May 2, 2003, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Any party wising to oppose such objections must file and serve all parties with its response. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.