**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

LAXMAN S. SUNDAE and JUDITH A. SUNDAE,

Plaintiffs,

v.

THOMAS W. ANDERSON, individually and as an employee of Metropolitan Airports Commission; METROPOLITAN AIRPORTS COMMISSION; ROBERT SWENSON; and ANNETTE SIMMONS-BROWN,

Defendants.

Civil No. 02-855 (JRT/SRN)

**ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

---

Laxman S. Sundae, 2055 128th Street West, Rosemount, MN 55068, *pro se*.

Judith A. Sundae, 2055 128th Street West, Rosemount, MN 55068, *pro se*.

Gregory M. Bistram, Michael J. Moberg, and Kevin M. Decker, BRIGGS & MORGAN, W2200 First National Bank Building, 332 Minnesota Street, St. Paul, MN 55101, for defendants.

This action was originally filed in the district court of Dakota County, Minnesota, and was removed to this Court on April 23, 2002 pursuant to 28 U.S.C. §1441. Plaintiffs Laxman Sundae and Judith Sundae have filed suit against defendants alleging claims under federal and state law. This matter is now before the Court on plaintiffs' objections

FILED SEP - 3 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ____
DEPUTY CLERK ____

to the Report and Recommendation of United States Magistrate Judge Susan Richard Nelson dated April 23, 2003. The Court has conducted a *de novo* review of the objections pursuant to 28 U.S.C. § 636 (b)(1)(C) and D. Minn. LR 72.1(c)(2). For the reasons set forth below, the Court now adopts the Report and Recommendation and orders summary judgment in favor of defendants.

## BACKGROUND

The plaintiffs are husband and wife. This lawsuit arose after W.D. Schock Company ("Schock"), working for defendant Metropolitan Airports Commission ("MAC"), purchased plaintiffs' house[1] as part of MAC's noise mitigation program. The parties disputed the value of the home, and Laxman Sundae claimed that he was entitled to business relocation benefits because he operated a business out of the home. On January 8, 1997, the parties reached a global settlement under which plaintiffs received $157,000 in exchange for their "release of any and all claims of each and every kind present and future, that may be made by Judith Sundae and Laxman Sundae, except Laxman's business relocation claim." (Moberg Aff. Ex. 1.) Plaintiffs received a check, which Laxman Sundae endorsed.

On January 22, 1997, the City of Rosemount inspected the Sundae's replacement home and issued a Certificate of Occupancy[2] certifying that "the structure . . . has passed

[1] The home was apparently owned by Judith Sundae.

[2] Plaintiffs object to the submission of a Brodin Affidavit, to which the Magistrate Judge cited when quoting the Certificate of Occupancy. Plaintiffs argue that the Brodin affidavit is

Footnote continued on next page.)

final inspection." (Docket No. 37 Ex. 2 at 127.) This certificate was "conditional based upon completion of final grade, surfaced driveway and sidewalks ASAP in Spring 1997." (*Id.*) Plaintiffs moved into their new home sometime in February 1997. Plaintiffs claim that flooding occurred in this home between March and July of 1997, which damaged their property.

Because Laxman Sundae's business relocation claim was not included in the January 1997 global settlement, he proceeded with this claim. After initially receiving unsatisfactory results, Sundae proceeded to a "Level II" appeal, the final stage of administrative appeal. His claims were denied, and this finalized the administrative appeal process. (*See* Moberg Aff. Ex. 2.) Laxman Sundae's only recourse after this denial was to seek judicial review in state court, which he did on September 22, 1999. That case was removed to this District, and was dismissed in February 2001 for failure to state any claim upon which relief could be granted. *See Sundae v. W.D. Schock Co., Inc.*,

(Footnote continued.)

"based upon incomplete information" and should be disregarded. (Docket No. 33 at 8.) The Court has inspected its files and cannot locate any "Brodin Affidavit" therein. However, the Magistrate Judge cited only Exhibit B of this Affidavit, stating that such exhibit was the Certificate of Occupancy. The Magistrate Judge did not cite to any other portion of the Brodin Affidavit, nor did she cite it for any purpose other than to reference the Certificate of Occupancy. Although the Court does not have the Brodin Affidavit in its files, it does have a copy of the Certificate of Occupancy, which was submitted by Laxman Sundae as part of Exhibit 2 to his supplemental filing dated June 13, 2003. (*See* Docket No. 37 Ex. 2 at 127.) Therefore, it is immaterial if the Brodin Affidavit contained some errors or insufficiencies. For purposes of establishing the record in this case, the Court is concerned only with the Certificate of Occupancy. Because Laxman Sundae has supplied a copy of this certificate, the Court finds that the Magistrate Judge's conclusions that relied upon the certificate are unaffected . Plaintiffs' objections related to the Brodin Affidavit are moot, and are therefore overruled.

Civ. No. 99-1487, slip op. at 9 (D. Minn. Feb. 26, 2001) ("*Sundae I*"). This decision was affirmed by the Eighth Circuit.

Plaintiffs filed the present action on March 21, 2002. As the Magistrate Judge noted, the factual allegations in this case are nearly identical to – and in many cases repeat sections verbatim from – those in *Sundae I.*[3] However, with the exception of defendant Robert Swenson, who is named in both suits, this action is against different defendants than *Sundae I.*

## ANALYSIS[4]

### I. Standard of Review

Defendants have moved to dismiss this action for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because the parties submitted and the Magistrate Judge considered materials outside the pleadings, the Magistrate Judge correctly converted this motion to one for summary judgment pursuant to Rule 12(b).

---

[3] The Magistrate Judge extensively catalogued the identical nature of many of these claims, and the Court adopts the Magistrate Judge's findings in this regard. (*See* R&R at 4.)

[4] The Magistrate Judge noted "significant ambiguities" in plaintiffs' claims, relating to whether one or both plaintiffs was really bringing this action, and whether this action concerns discrimination as to flooding, personal relocation, or business relocation. The Magistrate Judge noted that all issues related to plaintiffs' personal home relocation were finally determined in *Sundae I.* She concluded, however, that any issues relating to Laxman's business relocation claim are valid in this suit because they were not raised in the previous case. The Magistrate Judge also construed the complaint as being brought by both plaintiffs. The Court adopts all of the Magistrate Judge's conclusions on these matters.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

## II. Scope of Plaintiffs' Objections

It is difficult to determine the scope of plaintiffs' objections. This Court's Local Rules mandate that an objecting party "shall specifically identify" the portions of the Report and Recommendation to which he or she is objecting. D. Minn. LR 72.1(c)(2). Furthermore, the Court need only make a *de novo* determination on "those portions to which objection is made." *Id.* Plaintiffs refer only to selected portions of the Report and Recommendation, but they seem to argue that these portions are sufficient to invalidate the entire recommendation. Because Courts construe *pro se* filings liberally, the Court will address each section of the Report and Recommendation.

The Court also notes that in some of their objection documents, plaintiffs now claim, apparently for the first time in this case, to be seeking a "mandamus action" under federal and state law. (*See* Docket Nos. 33, 35.) This amounts to a new claim, as the complaint did not mention any mandamus action or claim for injunctive relief. It also appears that plaintiffs made no such argument before the Magistrate Judge. The Court therefore construes this argument as an improper attempt by plaintiffs to amend their complaint. At this stage, plaintiffs may only make objections to the Report and Recommendation; they may not raise new issues or claims. Accordingly, the Court will disregard all matters relating to plaintiffs' asserted "mandamus action."

## III. Claims Against Defendant Annette Simons-Brown

The Magistrate Judge correctly noted that defendant Annette Simons-Brown ("Simons-Brown") is mentioned in only one paragraph of the complaint. It is clear from

the face of the complaint that these allegations state no claim against Simons-Brown under any of plaintiffs' theories. (*See* Complaint ¶ 21.) Accordingly, the Court agrees with the Magistrate Judge that even if plaintiffs' complaint stated otherwise valid claims, the action against Simons-Brown must be dismissed.

## IV. Claims Against Defendant Robert Swenson

As noted above, defendant Robert Swenson ("Swenson") was also named in *Sundae I*. In that case, the Court found that plaintiffs had no basis for relief, and dismissed the case against Swenson and his co-defendants. *See Sundae I* at 9. The Magistrate Judge thus correctly found *Sundae I* invokes the doctrine of *res judicata*. This doctrine bars a party from asserting a claim if three requirements are met: (1) the prior judgment was entered by a court of competent jurisdiction; (2) the decision was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases. *Val-U Construction Co. of So. Dakota v. Rosebud Sioux Tribe*, 146 F.3d 573, 581 (8th Cir. 1998); *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990). A claim is barred by *res judicata* if it "arises out of the same nucleus of operative facts as the prior claim." *Lane*, 899 F.2d at 742.

The Court agrees with the Magistrate Judge that Laxman Sundae's claims against Swenson are clearly barred by *res judicata*. First, there is no dispute that the *Sundae I* Court was one of competent jurisdiction. Second, the Court finds that *Sundae I* was a

final judgment on the merits.[5] Third, the parties and causes of actions are the same; the Magistrate Judge correctly noted that the allegations against Swenson in this suit are identical to those in *Sundae I.* Therefore, Laxman Sundae's complaint against Swenson is barred by *res judicata*. The Court also agrees with the Magistrate Judge that to the extent Judith Sundae asserts claims against Swenson, those claims must be dismissed because they are entirely unsupported. The complaint never mentions Swenson by name, and the Magistrate Judge correctly noted that any allegations against "John Doe" do not state any factual claim against Swenson. Therefore, the Court agrees that even if plaintiffs brought an otherwise valid complaint, their allegations against Swenson must be dismissed.

## V. Count I – Negligence Claim

Plaintiffs' negligence claim is based upon defendants' alleged breach of their duty to inspect plaintiffs' new home to ensure that it was decent, safe, and sanitary ("DSS"). Plaintiffs allege that this breach caused the flood damage to their home. The Magistrate

[5] Plaintiffs claim that there has been no final judgment because administrative proceedings were still pending when *Sundae I* was decided. This rests in part upon Laxman Sundae's claim that Level II proceedings were not completed. This assertion is plainly contradicted by the letter of decision for Level II, which provides that "[t]his is the final determination to be made within this Level II Appeal process." (Moberg Aff. Ex. 2.) The letter further provides that plaintiffs' next level of recourse was "to seek judicial review (Level III)." (*Id.*) Plaintiffs also argue that Level II is not completed because they are "seeking a writ of mandamus to enforce head of agency order to fix agency damages." (Docket No. 33 at 3.) As discussed above, however, plaintiffs have not properly brought any mandamus action. Finally, Laxman Sundae argues that administrative proceedings before the Federal Aviation Administration are still pending. However, he provides no evidence of any appeal or review by that agency. The Court therefore finds that *Sundae I* was a final judgment on the merits.

Judge found that this claim fails as a matter of law because defendants clearly did inspect the home, as evidenced by the Certificate of Occupancy. Plaintiffs appear to claim that the MAC did not comply with its obligation to inspect their home because the inspection was actually conducted by the City of Rosemount. This argument is without merit.

In agreeing to the January 1997 global settlement, plaintiffs waived all future claims related to MAC's acquisition of their old home. Therefore, the Magistrate Judge properly found that this negligence claim is barred.

Even if it were not barred, however, the claim would fail. As the Magistrate Judge noted, plaintiffs' relocation was governed by Federal Aviation Administration ("FAA") regulations. The regulations provide that MAC was required to inspect plaintiffs' new home "to determine that it meets the standards for decent, safe, and sanitary housing." FAA Order 5100.37A, Land Acquisition and Relocation Assistance for Airport Projects, Ch. 6-4, *available at* http://www2.faa.gov/arp/app600/49CFR24/chap6.htm (visited Aug. 24, 2003). The regulations further provide that "[t]he term 'decent, safe, and sanitary dwelling' means a dwelling which meets applicable housing and occupancy codes." *Id.* at Ch. 1-16, *available at* http://www2.faa.gov/arp/app600/49CFR24/chap1.htm (visited Aug. 24, 2003). The housing codes applicable to plaintiffs' house were those of the City of Rosemount.[6] Therefore, it was completely appropriate for the city to inspect plaintiffs' new home, and for MAC to rely upon that inspection in compliance with FAA regulations.

---

[6] The FAA also imposes supplementary requirements that apply even if they are not mandated by local authorities. These are that any dwelling shall:

Footnote continued on next page.)

Plaintiffs also argue that the Certificate of Occupancy does not comply with the DSS inspection because it was conditional, pending completion of outdoor grading and paving work. This argument is misplaced because plaintiffs' house was decent, safe, and sanitary when plaintiffs moved in. Defendants thus fulfilled their inspection requirement

---

(Footnote continued.)

a. Be structurally sound, weathertight, and in good repair.

b. Contain a safe electrical wiring system adequate for lighting and other devices.

c. Contain a heating system capable of sustaining a healthful temperature (of approximately 70 degrees) for a displaced person, except in those areas where local climatic conditions do not require such a system.

d. Be adequate in size with respect to the number of rooms and area of living space needed to accommodate the displaced person. There shall be a separate, well lighted and ventilated bathroom that provides privacy to the user and contains a sink, bathtub or shower stall, and a toilet, all in good working order and properly connected to appropriate sources of water and to a sewage drainage system. In case of a housekeeping dwelling, there shall be a kitchen area that contains a fully usable sink, properly connected to potable hot and cold water and to a sewage drainage system, and adequate space and utility service connections for a stove and refrigerator.

e. Contains unobstructed egress to safe, open space at ground level. If the replacement dwelling unit is on the second story or above, with access directly from or through a common corridor, the common corridor must have at least two means of egress.

f. For a displaced person who is handicapped, be free of any barriers which would preclude reasonable ingress, egress, or use of the dwelling by such displaced person.

FAA Order 5100.37A, Land Acquisition and Relocation Assistance for Airport Projects, Ch. 6-4, *available at* http://www2.faa.gov/arp/app600/49CFR24/chap1.htm (visited Aug. 24, 2003). These requirements do not include issues related to flooding.

under FAA rules. As the Magistrate Judge noted, plaintiffs and/or their contractors -- not defendants – were responsible for properly completing the final grading and surfacing.

The Court finds that defendants did fulfill their duty to inspect plaintiffs' new home. Accordingly, because plaintiffs can show no breach of any duty, their negligence claim fails. *See Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995) (stating negligence claim requires demonstration of breached duty).

## VI. Count II – 42 U.S.C. § 1983 Claim

Plaintiffs allege violations of their equal protection[7] and procedural due process rights under the U.S. Constitution. First, the Court agrees with the Magistrate Judge that plaintiffs' equal protection allegations are conclusory and are supported by no evidence or allegations of material fact. (*See* R&R at 15-16.) These claims therefore fail. *See Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (holding that civil rights pleadings may be construed liberally, but they must not be conclusory and must set forth facts stating a proper claim).

The Court also agrees that plaintiffs' procedural due process claims fail. These allegations are based upon plaintiffs' claims related to flood damage. As the Magistrate Judge noted, these claims and all others related to plaintiffs' home relocation were

[7] The Court adopts the Magistrate Judge's presumption that, in the absence of specific allegations, Laxman Sundae alleges racial discrimination and Judith Sundae, a white female, alleges gender discrimination.

waived in the January 1997 global settlement. (*See* R&R at 17-18.) Accordingly, plaintiffs may not seek redress for their flood damage from defendants.

## VII. Count III – MHRA; 42 U.S.C. §§ 1981, 1982, and 2000d; and the Minnesota Constitution

### A. Minnesota Human Rights Act

It is unclear from plaintiffs' arguments to what extent they object to the Magistrate Judge's conclusions on Count III. Nevertheless, the Court finds that the Magistrate Judge's determinations were correct. First, plaintiffs' discrimination allegations under the Minnesota Human Rights Act ("MHRA") are barred by that law's one-year statute of limitations. *See* Minn. Stat. § 363.06, subd. 3. Plaintiffs' allegations relate to the inspection and flooding[8] of their replacement home. Both of these events took place in 1997. Plaintiffs filed this case on March 21, 2002, well past the one-year limitations period. Therefore, the Magistrate Judge correctly found that plaintiffs MHRA claims are time-barred.

### B. 42 U.S.C. §§ 1981 and 1982, and 2000d

These three statutes protect against racial discrimination, but none of them protects against gender discrimination. *See Lake v. Honeywell, Inc.*, Civ. No. 96-944, 1997 WL 458463 at *5 (D. Minn. May 27, 1997) ("[I]t is well established that claims for gender discrimination are not viable claims under section 1981."); *Knott v. Missouri Pacific R.R.*

[8] As the Court noted above, this claim also fails because plaintiffs may not sue for flood-related damages here.

*Co.*, 389 F. Supp. 856, 857 (E.D. Mo. 1975) (noting that § 1982 does not ban discrimination based on gender); *North Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 545 (1982) (noting that "42 U.S.C. § 2000d, barred discrimination on the basis of 'race, color, or national origin,' but not sex."). Therefore, the Magistrate Judge correctly found that any claims by Judith Sundae under these statutes fail as a matter of law.

The Court also agrees with the Magistrate Judge that Laxman Sundae has presented no evidence to support his claims of discrimination: in the making and enforcement of contracts (§ 1981); in connection with the lease, holding, or conveyance of real and personal property (§ 1982); and in connection with a program or activity that receives federal financial assistance (§2000d). As with Laxman Sundae's equal protection claims, these discrimination claims are conclusory and bereft of supporting evidence. This was recognized as to the bulk of Laxman Sundae's claims in *Sundae I*, which rest on the same factual allegations as his present complaint. However, as the Magistrate Judge correctly found, Sundae's allegations relating to his business relocation claims are equally devoid of support. Therefore, the Court will grant summary judgment on these claims.

### C. Minnesota Equal Protection Clause

The Court finds that the Magistrate Judge correctly interpreted plaintiffs' complaints under the Equal Protection Clause of the Minnesota Constitution as relating to "discrimination in connection with replacement home inspections and processing flood claims." (R&R at 24.) First, as discussed above, plaintiffs' allegations regarding flood

claims are barred because they were waived as part of the January 1997 global settlement. Second, plaintiffs' allegations regarding inspections fail, because the Court has determined that defendants fulfilled their duty to inspect the replacement home. Therefore, even if plaintiffs produced evidence of disparate impact to implicate the Minnesota Constitution – and the record shows that they have not – their claims under the state's Equal Protection Clause would fail as a matter of law.

## VIII. Count IV – 42 U.S.C. §§ 1985(3) and 1986

Section 1985(3) prohibits conspiracies to deprive persons of equal protection of the laws. *See* 42 U.S.C. § 1985(3). The Magistrate Judge correctly explained the elements required to state a claim under this law, and the Court need not repeat them here. (*See* R&R at 26-27.) The Court finds that here, as with plaintiffs' other civil rights claims, they have relied upon conclusory allegations that are unsupported by facts or evidence. For this count, plaintiffs contend that defendant Thomas Anderson "has assisted MAC's contractors and employees to deny plaintiffs access to relocation assistance, production of documents, notice and opportunity to [be] heard and has made false representations before the FAA investigators." (Complaint ¶36.) Plaintiffs then refer to a list of "specific violations of laws approved by defendant Anderson." This list provides no support for plaintiffs' allegations, but is simply a list of laws that plaintiffs claim Anderson violated. The complaint is otherwise bereft of factual support for these allegations, simply reiterating that plaintiffs' rights were violated. (*See, e.g.*, Complaint ¶¶ 14, 18.) The Court agrees with the Magistrate Judge that "plaintiffs advance nothing

more than bare allegations and rank speculation." (R&R at 27 (quoting *Maharey v. Warren County*, 206 F.3d 770, 772 (8th Cir. 2000)).) Because "[s]peculation and conjecture are not enough to prove a conspiracy exists," the Court finds that plaintiffs' § 1985 claim fails. *See Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999). The Court must therefore also dismiss plaintiffs' § 1986 claim, since a claim under that statute is dependent upon a valid § 1985 claim. *See Adams ex rel. Harris v. Boy Scouts of America-Chickasaw Council*, 271 F.3d 769, 774 n.8 (8th Cir. 2001).

## IX. Count V – Negligent/Intentional Infliction of Emotional & Physical Distress

### A. Intentional Infliction of Emotional/Physical Distress

A claim for intentional infliction of emotional distress under Minnesota law is governed by a two-year statute of limitations. *See* Minn. Stat. § 541.07(1); *Jones v. Independent Sch. Dist. No. 720*, No. C9-02-1205, 2003 WL 1702000 at *2 (Minn. Ct. App. Apr. 1, 2003). Plaintiffs state that their complaints came to light "more than five years" before the complaint was filed. (Complaint ¶ 41.) This clearly renders the claim for intentional infliction of emotional distress time-barred under the statute of limitations.[9] Therefore, the Magistrate Judge correctly found this claim to be invalid.

---

[9] As the Magistrate Judge noted, Laxman Sundae's complaint in *Sundae I* contained a similar allegation, stating that he had suffered harm for "more than five years" due to defendants' actions. (*See* Moberg Aff Ex. 3 ¶ 81.) This tends to show that plaintiffs' claims far exceed the applicable limitations period.

**B. Negligent Infliction of Emotional/Physical Distress**

A claim for negligent infliction of emotional distress is subject to a six-year statute of limitations, so this claim is not time-barred. *See* Minn. Stat. § 541.07; *Jones*, 2003 WL 1702000 at *3. To establish a claim for negligent infliction of emotional distress under Minnesota law, plaintiffs must show that they: (1) were within a zone of danger of physical impact; (2) reasonably feared for their own safety; and (3) suffered severe emotional distress with attendant physical manifestations. *K.A.C. v. Benson*, 527 N.W.2d 553, 557 (Minn. 1995). Plaintiffs allege that they "were in close proximity to such conduct and [were] fearful of [their] well being and safety," but do not explain what physical conduct to which they refer, or how any conduct described in the complaint caused such fear. (*See* Complaint ¶ 39.) More importantly, plaintiffs have established no evidence that they were near any "zone of danger of **physical impact**." *K.A.C.*, 527 N.W.2d at 557 (emphasis added). Therefore, the Court concludes that plaintiffs cannot establish a claim of negligent infliction of emotional distress.

**X. Plaintiffs' Motions**

For the reasons stated above, the Court has concluded that plaintiffs are entitled to no relief, and that defendants' motion for summary judgment must be granted. Accordingly, the Court also agrees with the Magistrate Judge that plaintiffs' motions to remove the law firm of Briggs and Morgan, to strike certain exhibits, and to "Enforce Agency's Final Order," are moot.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, the Court **OVERRULES** plaintiffs' objections [Docket Nos. 33, 37-38] and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 32]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment [Docket No. 11] is **GRANTED**.

2. Plaintiffs' Complaint [Docket No. 1] is **DISMISSED WITH PREJUDICE**.

3. Plaintiffs' Motion to Remove the Law Firm of Briggs and Morgan from this Lawsuit [Docket No. 15] is **DENIED AS MOOT**.

4. Plaintiffs' Motion to Disqualify the Law Firm of Briggs and Morgan from this Lawsuit [Docket No. 25] is **DENIED AS MOOT**.

5. Plaintiffs' Motion to Strike Defendants' Exhibits 1-3 [Docket No. 16] is **DENIED AS MOOT**.

6. Plaintiffs' Motion for an Order to Enforce Agency's Final Decision [Docket Nos. 14, 27] is **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 2, 2003
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge